FILED
Sep 09, 2024
02:18 PM(ET)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS





# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT MURFREESBORO

| | | |
|---|---|---|
| **BELINDA LEMAIRE,** | ) | **Docket No.: 2021-05-0969** |
| **Employee,** | ) | |
| **v.** | ) | |
| **LOWES INVESTMENT** | ) | **State File No.: 45689-2020** |
| **CORPORATION,** | ) | |
| **Self-Insured Employer.** | ) | **Judge Thomas Wyatt** |

---

## COMPENSATION ORDER

---

On August 28, 2024, the Court heard Belinda Lemaire's petition for medical benefits awarded in an earlier compensation hearing. Specifically, she alleged that Lowes has not provided her a new panel of physicians to replace Dr Jeffrey Hazlewood, who discharged her from his care.

Lowes argued that Ms. Lemaire's conduct at her most recent visit justified Dr. Hazlewood's discharge of her as a patient. It alleged that she attended the visit with the intent to verbally abuse him so that he would discharge her, thus enabling her to select another treating physician. For that reason, Lowe's contended that the Court should permanently suspend her right to future medical benefits or require her to return to a previously-authorized physician.

For the reasons below, the Court holds that Ms. Lemaire is entitled to another panel.

### History of Claim

After a June 6, 2023 compensation hearing, Ms. Lemaire was awarded future medical benefits for her work-related complex regional pain syndrome. In that hearing, she asked to change authorized treating physicians. However, she established no basis under the law justifying a new panel.

Ms. Lemaire's first visit with Dr. Hazlewood after the compensation hearing

1

occurred on December 18, 2023. She and the doctor mostly argued during this visit. Dr. Hazlewood exited the room, signed a letter discharging Ms. Lemaire as a patient, and instructed his office staff to present the letter to her for signature. The document stated in part: "The purpose of this letter is to inform you that I will no longer be able to serve your chronic pain needs . . . and: I am discharging you as a patient." The document contained a handwritten notation stating that the reason for the discharge was, "[d]emeaning behavior toward treating physician. There is no remaining doctor/patient relationship." Ms. Lemaire refused to sign the document.

What exactly transpired during the December 18 visit is unclear. However, Dr. Hazlewood's office note and Ms. Lemaire's testimony suggests they interacted during that visit much like they did at Dr. Hazlewood's deposition. There, Ms. Lemaire's cross-examination deteriorated into an argument in which she and the doctor leveled charges against each other. Both responded with long, ardent self-defenses.

Dr. Hazlewood's December 18 office note stated that Ms. Lemaire attacked his integrity "throughout the whole visit." Yet Dr. Hazlewood also wrote that Ms. Lemaire provided a standard medical history to "my nurse before I walked into the room." That history included no improvement in her symptoms, including temperature, color, skin, and toenail changes, swelling and clawing in her toes, and foot spasms. Ms. Lemaire's history also included a report of bunions and her use of a telephone app to obtain cognitive therapy similar to that which Dr. Hazlewood had suggested for her.

Dr. Hazlewood also noted that Ms. Lemaire said the workers' compensation system had "frauded her," causing her to be unable to trust anyone. He added, "I asked her then if I was one of the ones that she felt had frauded her, and . . . she says, 'You have documented untruths on purpose.'" Ms. Lemaire explained she responded that way because Dr. Hazlewood twice documented in his records that she reported symptoms in the foot that was not injured. She also stated that Dr. Hazlewood wrote in his records that he reviewed pictures of her injured foot when he did not do so.

Dr. Hazlewood continued in his report, "I then asked her why she comes back today if she has no trust in me whatsoever, and she says, 'she was made to by the judge.'" Ms. Lemaire testified that she actually said she returned to him because the judge ordered that he was the physician authorized to treat her work injury.

Dr. Hazlewood also documented that he had treated her pain in the past and that Ms. Lemaire had declined some of the treatment he offered. She explained that she tried acupuncture and H-wave therapy ordered by Dr. Hazlewood but they made her pain worse. She declined nerve blocks because Dr. Hazlewood could not identify the actual medications that would be administered. She claimed she needed to know the medications to make sure she was not allergic to them. She also testified that, in the past, she asked Dr.

Hazlewood about cognitive therapy.[1] Dr. Hazlewood told her that might help, but he did not know of practitioners in the Nashville area who offered it. She stated she found local practitioners who would provide the therapy, but Dr. Hazlewood still did not order it.

During cross-examination at the hearing, Lowes accused Ms. Lemaire of exhibiting a pattern of refusing to let physicians examine and/or treat her. She responded that she refused to let the authorized foot doctor she saw before Dr. Hazlewood touch her again because he had manipulated her foot in a manner that caused extreme pain. She asked for a new treating physician after that incident, and Lowe's gave her a new panel.

Counsel questioned Ms. Lemaire about refusing to see physicians for employer's examinations in previous litigation. She responded that she would not see those doctors because both had fish tanks in their offices. She explained that she has fish allergies that could lead to life-threatening reactions from exposure to fish odors. In fact, she had a serious reaction in one of the physician's offices just by being in the same room with a fish tank.

Lowe's also asked her whether she refused to allow Dr. Hazlewood to examine her. Ms. Lemaire denied this allegation and, to the contrary, stated she wanted him to more thoroughly examine her. When asked why she had returned to Court for medical benefits, Ms. Lemaire testified that she needs treatment for her complex regional pain syndrome until additional treatment options become available.

## Findings of Fact and Conclusions of Law

Tennessee Code Annotated section 50-6-204(g)(2)(A) (2023) states that the Court of Workers' Compensation Claims has jurisdiction to decide issues about medical benefits awarded by judgment after a compensation hearing. A hearing to consider a medical-benefits issue is conducted "in accordance with § 50-6-239(c)." *Id.* In this hearing, the employee must prove her entitlement to the benefits requested by a preponderance of the evidence. *Id.* at -239(c)(6).

The statutory obligations between an employer and employee regarding the provision of medical benefits is clear. Section 50-6-204(a)(1)(A) states, "The employer . . . shall furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by [the] accident[.]" Concurrently, "The injured employee shall accept the medical benefits afforded under this section provided . . . [that] the employer shall designate a group of three (3) or more independent reputable physicians . . . from which the employee shall select one (1) to be the treating physician." *Id.* at -204(a)(3)(A)(i).

---

[1] The use of the phone app she reported was in an effort to obtain cognitive therapy of the nature recommended by Dr. Hazlewood.

Dr. Hazlewood's discharge of Ms. Lemaire as a patient leaves her without a physician authorized to treat her work-related condition. She requested a new panel of physicians qualified to treat her. Lowes countered that it should not be put to the trouble and expense of giving another panel when Ms. Lemaire will decline treatment from, and make unfounded charges against, the physician she selects. In other words, the Court should hold that Ms. Lemaire's conduct toward Dr. Hazlewood is sufficiently egregious to merit permanent suspension of her right to future medical benefits.

Lowes cited no statutory authority permitting a permanent suspension of future medical benefits, and the Court located none. Section -204(d)(7) permits an employer to suspend an employee's right to compensation "[i]f the employee refuses to comply with any reasonable request for examination or to accept the medical or specialized medical services that the employer is required to furnish[.]" However, the suspension lasts only "while the injured employee continues to refuse [examination or treatment.]"

Here, the record does not support a finding that Ms. Lemaire refused to let Dr. Hazlewood examine her. To the contrary, she made an appointment, gave her medical history to his nurse, and brought photographs of her injured foot for him to review. Only after Dr. Hazlewood discharged her as a patient did Ms. Lemaire decline examination by his nurse.

Likewise, Ms. Lemaire's failure to undergo the nerve block recommended by Dr. Hazlewood does not rise to the level of noncompliance. Dr. Hazlewood stated in both his report and deposition testimony that he "offered" the nerve blocks as a treatment *option* to Ms. Lemaire. He did not insist that she undergo the blocks, nor did he contend that her decision to decline them worsened her condition. In fact, Dr. Hazlewood confirmed that other treatment he recommended, which Ms. Lemaire underwent, did not make her condition better.

The circumstances here are similar to those in *Newell v. Metro Carpets, LLC,* 2016 TN Wrk. Comp. App. Bd. LEXIS 57 (Sept. 28, 2016), where the authorized physician discharged an employee from care because he criticized the physician on social media. The employer argued that the employee made the unfavorable posts to get a chance to select a new treating physician.

The Appeals Board affirmed the trial court's order that the employer provide a new panel. The Board cited *Rader v. Hurd Lock and Manufacturing Company,* 1990 Tenn. LEXIS 427 (Tenn. 1990), holding the employee was justified in seeking care on her own when the authorized treating physician refused to treat her after she voiced dissatisfaction with the treatment she received. *Id.* at *9-10; *Newell,* 2016 TN Wrk. Comp. App. Bd. LEXIS 57, at *5-6.

4

Based on the above findings and authority, the Court holds that Lowes shall promptly provide Ms. Lemaire a panel of three or more physicians qualified and willing to treat her work-related complex regional pain syndrome.[2]

**IT IS, THEREFORE, ORDERED** as follows:

1. Lowes shall promptly offer a panel of physicians qualified and willing to treat Ms. Lemaire's work-related complex regional pain syndrome and shall communicate that panel to her as quickly as practicable.

2. The Court taxes Lowes with payment of the $150.00 filing fee, which it shall remit to the Clerk of the Court of Workers' Compensation Claims within five business days after issuance of this order.

3. Unless appealed, this order becomes final in 30 days.

**ENTERED September 9, 2024.**

_Thomas Wyatt_
_____
**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

---

[2] The Court will not require Ms. Lemaire to return to the authorized physician who saw her before Dr. Hazlewood. Lowes previously agreed that Ms. Lemaire's complaint about that physician's painful examination justified her request for a new panel. Any attempt to restore that once-failed doctor-patient relationship would be futile.

# APPENDIX

<u>Exhibits:</u>

1. Ms. Lemaire's Rule 72 Declaration
2. Transcript of deposition of Dr. Hazlewood
3. Revised responses to requests for admissions
4. Records of Neuhaus Foot & Ankle
5. Copy of photograph of Ms. Lemaire's injured foot
6. Transcripts of telephone conversations (identification only—sustained objections based on hearsay and lack of foundation)
7. Report of Premier Radiology (identification only—sustained objection based on lack of relevance)
8. Transcript of recording of visit with Dr. Hazlewood and his office staff (identification only—sustained objections based on hearsay and lack of foundation)
9. Transcripts of telephone conversations (identification only—sustained objections based on hearsay and lack of foundation)
10. Copies of emails (identification only—sustained hearsay objection)
11. Internet information about Dr. Matt Bell (identification only—sustained objections for hearsay and lack of relevance)
12. Opinion in the case of Lemaire v. Monster Energy Co.
13. Records of Dr. Hazlewood, including discharge letter
14. Copies of photographs of Ms. Hazlewood's feet
15. Email from Ms. Lemaire to Jodi Downs and Tiffany Sherrill (identification only—sustained objection for lack of foundation)
16. Not used.
17. Reports of BJC Healthcare and Washington University Physicians

## CERTIFICATE OF SERVICE

I certify that a copy of the Order was sent as indicated on September 9, 2024.

| Name | U.S. Mail | Email | Service sent to: |
|---|---|---|---|
| Belinda Lemaire, Self-Represented Employee | X | X | b.lemaire1@outlook.com<br>401 Jonesboro Court<br>Lavergne, TN 37086 |
| Tiffany Sherill Employer's Attorney | | X | tbsherrill@mijs.com<br>dmduignan@mijs.com |

_____
Penny Shrum, Court Clerk
**WC.CourtClerk@tn.gov**

7



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
   - ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
   - ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.

   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on _____    ☐ Other Order filed on _____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s) (Requesting Party):** _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee
Appellee's Address: _____ Phone: _____
Email: _____
Attorney's Name: _____ BPR#: _____
Attorney's Email: _____ Phone: _____
Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*